Plaintiffs' plea of estoppel is therefore overruled.

(6) Defendants' plea of estoppel, however, is well founded and is maintained.

The deed of George West in 1914, which plaintiffs attack, was not merely from the minors. It was a joint deed from Mrs. Ada Bridgeman, their mother, and from the present plaintiffs, and shows that Mrs. Ada Bridgeman, individually, was a warrantor to George West.

The plaintiffs are here claiming, suing, and asserting title as the heirs of their mother, she having inherited an interest from their predeceased brother, Robert T. Bridgeman.

The obligation of joint vendors to maintain the vendee in peaceable possession is an indivisible one, though their obligation to respond in money for the purchase price is divisible. Smith v. Elliot, 9 Rob. 3; Schultz v. Ryan, 131 La. 78, 59 So. 21, and cases there cited.

Mrs. Ada Bridgeman could have asserted no claim to the property because she had sold it with warranty. Such obligation of warranty extends to the entire title, and plaintiffs claiming under her have no more right to sue to evict defendants claiming under George West than their mother would have had.

The institution of a suit claiming title to property by inheritance from a deceased person is an unconditional acceptance of his succession, and the unconditional heir makes himself liable for the obligations of the deceased person whose succession he has accepted, and has no right of action to recover the property, if his deceased ancestor, in disposing of it, obligated himself to warrant the title. Griffing v. Taft, 151 La. 442, 452, 91 So.

832; Berry v. Wagner, 151 La. 456, 472, 91 So. 837.

(7) The only issue passed upon by the trial judge was the plea of prescription of ten years urged by defendants to maintain the title of George West. This plea was sustained and plaintiffs' demands were rejected by the judgment of the lower court and plaintiffs' suit dismissed at their costs. From this judgment, plaintiffs have appealed.

However, the defendants have answered the appeal and pray that all of their numerous defenses be sustained in this court.

For the reasons assigned, the judgment appealed from is affirmed at plaintiffs' costs.

O'NIELL, C. J., absent.

185 La. 668

## STATE v. BANANA SELLING CO., Inc.

No. 33874.

Supreme Court of Louisiana.

June 30, 1936.

Rehearing Denied Oct. 6, 1936.

Spencer, Gidiere, Phelps & Dunbar and Wood Brown, all of New Orleans, for appellant.

D. M. Ellison, P. H. Stern, and Charles J. Rivet, Sp. Assts. to Atty. Gen., for the State.

LAND, Justice.

The defendant, Banana Selling Company, Inc., is a corporation organized and existing under the laws of this state, with its domicile in the city of New Orleans, and is engaged in the business of "Ripening and Sale of Bananas."

During a number of years, the Fruit Dispatch Company has been delivering, by shiploads to defendant company, all of its ripe and turning fruit.

At the end of the year, 1932, there was due by defendant company to the Fruit Dispatch Company $330,243.29; at the end of the year, 1933, the balance due was $312,925.88; and at the end of the year, 1934, there was a balance due of $234,734.69. T., p. 39.

The state claims in the present proceeding an additional corporation franchise tax for the years 1933, 1934, and 1935 on these balances, with statutory penalty, attorney's fees, cost of examination of books, and court cost, and prays for recognition and enforcement of its lien and privilege.

(1) The ground upon which the state seeks recovery in this case is that defendant company used, as its capital, the money due by it to Fruit Dispatch Company, and that these balances, therefore, constitute "borrowed capital," within the meaning of that term as employed in the statutes of this state providing for the levy and collection of corporation franchise taxes.

Act No. 8 of 1932, Act No. 8 of 1932 as amended by Act No. 18 of 1934 and Act No. 25 of the First Extra Session of 1934, and Act No. 10 of the First Extra Session of 1935.

Defendant company, on the other hand, contends that these balances are due on "open account," and are not subject, therefore, to the additional corporation franchise taxes, which the state claims to be delinquent and unpaid in this case. T., p. 29.

On the question as to whether or not there was a contract between Banana Selling Company, Inc., and Fruit Dispatch Company, the accountant of defendant company testified as follows:

"I believe there is but it is not *in the minutes,*—that was the understanding between the parties. Whether or not there is a contract, I am not certain." T., p. 37. (Italics ours.)

"To the best of my knowledge, there is no contract regarding the terms of sales by the Fruit Dispatch Company or purchases by the Banana Selling Company, and at any time the Fruit Dispatch Company can discontinue making sales to the Banana Selling Company—consider their extension of credit sufficient for business reasons." T., pp. 38, 39.

The accountant of defendant company also testified that, at the end of the year, 1932, there was due by that company to the Fruit Dispatch Company $330,243.29, which was long past due at that time, for bananas procured from the Fruit Dispatch Company and sold long before the end of 1932; that this was the case also as to the balance of $312,925.88, due at the end of 1933, and also as to the balance of $234,734.69 due at the end of 1934.

Defendant company continued to procure bananas for sale from the Fruit Dispatch Company, notwithstanding this large indebtedness. It paid its operating expenses from the proceeds of sale of the bananas, and paid its creditor such sums as it deemed convenient. T., pp. 39, 40.

Defendant company has a capital stock of only $5,000, which has not been increased since its incorporation in January,

1925. Instead of operating through further contributions from its stockholders, it has used, as its capital, the money due by it to Fruit Dispatch Company.

To permit defendant company to operate as a corporation and enjoy corporate privileges derived from the state, by paying a tax on only $5,000 of capital stock, when it has operated since 1932 on large sums of money contributed through merchandise furnished by the Fruit Dispatch Company, would defeat the purpose of the law in taxing borrowed capital.

The contention of defendant company that the retention of money due by it to its creditor and its use in the corporate business is not borrowing capital is, in our opinion, illogical and unsound.

"Capital" is defined as "That portion of the assets of a corporation, regardless of their source, which is utilized for the conduct of the corporate business and for the purpose of deriving therefrom gains and profits. 7 R.C.L. 196." Ballentine's Law Dictionary.

Our conclusion is that the price of the bananas due by defendant company to its vendor, which it retained and used in its business, is borrowed capital, without which it could not have continued its activities. And this conclusion is greatly strengthened by the statement of earnings of defendant company for the years 1925 through 1928, which is as follows:

| Year | Profit | Dividends Paid | Bal. of Surplus |
|------|--------|----------------|-----------------|
| 1925 | $228,611.82 | | $228,611.82 |
| 1926 | $156,268.35 | $336,000.00 | $ 48,880.17 |
| 1927 | $222,646.76 | $ 75,000.00 | $196,526.93 |
| 1928 | $218,184.47 | $285,000.00 | $129,711.40 |

T., p. 29.

It is not possible that these large profits could have been realized by defendant company by the operation of a capital of $5,000. There is no evidence in the record to show any "borrowed capital" by defendant company during the years 1925–1928. Its capital stock of $5,000 was not increased. Manifestly, from the very inception of its corporate existence and activities, defendant company has operated its business through merchandise furnished by the Fruit Dispatch Company.

It is true that the corporation franchise tax statutes of the state do not define "borrowed capital." But it is also true that courts will look at the substance of things, and will decide cases according to the ultimate facts found.

(2) It is contended by defendant company that the due process and equal protection clauses of the Fourteenth Amendment have been violated in this case by the inclusion by the state in the tax on "borrowed capital" of an "open account" and of losses by the company for the years 1932 and 1933.

We fail to see wherein the tax sought to be levied is arbitrary and without reasonable basis; or wherein such tax is arbitrary and discriminatory, in a constitutional sense, against defendant company.

From Southern Realty Corporation et al. v. McCallum (C.C.A.5th Circuit) 65 F.(2d) 934, 936, the holding in which was approved by the Supreme Court of the United States by refusal of certiorari, Southern Realty Corp. v. Heath, 290 U.S. 692, 54 S.Ct. 127, 78 L.Ed. 596, we quote the following:

"With respect to the novel inclusion in the measure of the tax of longtime indebtedness, it is here made to appear that corporations had resorted to the device of issuing an insignificant amount of capital stock but a large amount of bonds, thus arranging for a permanent capital which would not increase the tax under the former laws. The Legislature deemed that such capital, equally with that raised by common or preferred stock, was employed in the corporate business and tended to increase it and make it profitable, and equally required protection at the hands of the state; and so ought equally to enter into the measure of the tax. This conclusion expressed in the statute of 1930 is not arbitrary and is within legislative power. * * *

"But some of the complainants have been unsuccessful and have lost the capital originally represented by their bonds or by their capital stock. Yet the law, providing for no deduction of a deficit measures their tax as though the loss had not occurred. A denial of equal protection is asserted. In effect, such corporations are dealt with as a separate class. No heed is paid to what capital they really have to do business with, but the greater their losses the larger the handicap of the tax exacted. The discrimination thus arising between corporations whose assets equal or exceed their capital and debts and those whose capital has been impaired by losses is undeniable. Yet we think it is not arbitrary, but may be rested upon a sound

principle. If the losses are so large as to leave assets less than the bonded indebtedness, as is shown by one complainant, that corporation is insolvent, and ought not to be in business but in bankruptcy. If the capital stock is only impaired, it ought to be reduced accordingly, and the corporation ought not to pretend to its full capital. Not only may customers be deceived thereby, but the likelihood of litigation and failure may make the state's protection of the business more costly. The tax in disregard of the deficit is justifiable as a discouragement of the continuance of their business in the state by corporations foreign or domestic which are insolvent or likely to become so."

The statement of earnings for the year, 1932, by defendant company, which has a capital stock of $5,000, shows a loss for that year of $51,349.32, and a direct charge against surplus during the same year of $2,983.91; also a loss in 1933 of $13,035.-26. T., p. 29.

The corporation franchise tax statutes of this state do not allow any deductions for such losses in computing the corporate franchise tax.

The case at bar, therefore, falls squarely within Southern Realty Corporation et al. v. McCallum, cited supra, as to the contention of defendant company that the tax is arbitrary and discriminatory.

In the case of State v. Xeter Realty, Limited, 182 La. 414, 417, 162 So. 29, 30, we said: "In answer to appellant's complaint that its capital stock is without any actual value and that the secretary of state acted arbitrarily in assessing it with a franchise tax based on its book borrowed capital, we think it is sufficient to say that the law allows no deduction for a deficit, and requires that appellant's tax be measured as if no loss has occurred. If appellant's losses have been so great as to reduce the value of its assets below the amount of its outstanding indebtedness, appellant is insolvent and should probably liquidate its affairs. Notwithstanding the deficit, appellant is liable for the tax so long as it remains unliquidated and continues to hold its charter within the state."

In the recent case of State of Louisiana v. Bisso Realty & Investment Co., Inc., 184 La. 579, 167 So. 87, the defendant claimed that it had the right to deduct a deficit, leaving a balance representing the value of its capital stock, upon which it had paid the tax. Defendant contended

in that case that Act No. 18 of 1934, subdivision 3, § 1, had amended the former law, for the purpose of allowing a failing corporation to deduct its losses. But we did not so construe Act No. 18 of 1934, and affirmed the holding in State v. Xeter Realty, Limited, 182 La. 414, 162 So. 29, to the effect that the law allows no deductions for a deficit.

(3) The defendant corporation, Banana Selling Company, has resorted in this case to the device of issuing an insignificant amount of capital stock, and has utilized for the conduct of the corporate business and for the purpose of deriving therefrom gains and profits, the price which it derived from the bananas which it purchased from Fruit Dispatch Company and for which it would some day have to pay. The indebtedness due by defendant company, included in the measure of the tax, is "longtime indebtedness," as in Southern Realty Corporation et al. v. McCallum, above cited, and the objection of defendant company, that the tax sought to be levied is arbitrary and without reasonable basis, is not only refuted by the facts of the case but is fully answered in the McCallum Case.

(4) In support of its argument on the federal questions, appellant relies on the following cases: Air-Way Electric Appliance Corporation v. Day, 266 U.S. 71, 45 S.Ct. 12, 69 L.Ed. 169; Southern Ry. Co. v. Greene, 216 U.S. 400, 30 S.Ct. 287, 54 L.Ed. 536, 17 Ann.Cas. 1247; Looney v. Crane Co., 245 U.S. 178, 38 S.Ct. 85, 62 L.Ed. 230; Royster Guano Co. v. Virginia, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989; Ohio Oil Company v. Conway, 281 U.S. 146, 160, 50 S.Ct. 310, 74 L.Ed. 775; Great Northern R. Co. v. Weeks, 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532; Board of Assessors of Parish of Orleans v. New York Life Ins. Co., 216 U.S. 517, 30 S.Ct. 385, 54 L.Ed. 597.

The cases cited have no bearing upon the issues herein involved. Defendant company is a domestic corporation, and does not claim to be engaged in interstate commerce; no tax is imposed on capital stock representing the corporation's property and business outside of the state; no questions as to ad valorem taxation are presented; no showing has been made of any discrimination injuriously affecting defendant company; and under the state statutes all corporations similarly situated are treated with exact equality.

Judgment was rendered in the court below in favor of the state condemning defendant company to pay additional franchise taxes for the year 1933, in the sum of $263.73, with 20 per cent. statutory penalty thereon, and 10 per cent. attorney's fees on taxes and penalty; for the year 1934, in the sum of $527.60, with 20 per cent. statutory penalty thereon, and $55.43 attorney's fees, and $15 for examination of books, subject to a credit of $78.85; and for the year 1935, in the sum of $459.47 with 20 per cent. statutory penalty thereon, and 10 per cent. attorney's fees on taxes and penalty, and all costs; and recognizing and enforcing the lien and privilege of the state.

In our opinion, the judgment appealed from is correct.

Judgment affirmed.

O'NIELL, C. J., dissents.