The 1220 Realty Company v. Commissioner. The Wheeler-Annex Properties, Inc. v. Commissioner.
1220 Realty Co. v. Commissioner
Docket Nos. 84610, 84611.
United States Tax Court
T.C. Memo 1962-67; 1962 Tax Ct. Memo LEXIS 241; 21 T.C.M. (CCH) 360; T.C.M. (RIA) 62067; March 27, 1962
Elmer J. Babin, Esq., 910 Carnegie Hall, Cleveland, Ohio, for the petitioners. John P. Graham, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in income tax as follows: Fiscal Year
Ended
Deficiency
The 1220 Realty Co.
4-30-56
$5,526.45
4-30-57
1,951.10
4-30-58
1,110.42
4-30-59
1,110.42
The Wheeler-Annex Prop-
erties, Inc.
4-30-56
4,079.67
4-30-57
1,951.11
4-30-58
1,110.43
4-30-59
1,110.42
The issues are (1) whether the petitioners are entitled to amortize their costs of acquiring two 99-year leasehold estates with remaining stated terms of 64 and 68 years, over the alleged 20-year life of the buildings on the leaseholds, and (2) whether the petitioners, which are on an *242 accrual basis, are entitled to deduct annual interest on a 10-year note which provided that no interest was due until five years hence and if the note itself was then paid in full, interest would be waived and cancelled. Findings of Fact The stipulated facts are found as stipulated. Each of the petitioners filed its corporate income tax returns with the district director of internal revenue at Cleveland, Ohio for the fiscal years ended April 30, 1956, 1957, 1958, and 1959. Elmer J. Babin is vice president, director, and owner of half of the stock of the petitioner, 1220 Realty Company, sometimes known as R.F.M.-Columbus Corporation. He acquired stock in Wheeler-Annex Properties, Inc., the other petitioner, in 1952. He is an attorney and represents both of the petitioners in these proceedings. He is also and has been since 1930, a licensed real estate broker, and has been engaged in the real estate business as broker, lawyer, investment consultant, operator and owner of properties all over the United States. The petitioners jointly purchased all of the stock of The Mills Real Estate Company under the terms of their written contract dated November 17, 1952, and their purchase *243 money note dated November 1, 1952. Mills at that time owned two separate 99-year leases, renewable forever, on two separate but adjoining parcels of land, immediately to the north of and adjoining the Deshler Hotel in the downtown business district of Columbus, Ohio. The stock was bought to acquire these leases, which was accomplished by the liquidation of Mills. The 99-year lease covering the first parcel expires December 31, 2016, and calls for an annual rental of $26,000. It covers the north 60 by 100 feet of the total land in question. The 99-year lease covering the second parcel expires December 31, 2020, and calls for an annual rental of $15,000. It covers the south 20 by 88 feet of the total land in question. This lease gives an option to purchase a fee title for $300,000 after 1942, under certain conditions. Each of these leases permits the lessees to tear down the building on the property if they erect a new building costing at least $100,000 for one property and $40,000 for the other. The lessee must maintain the building in good repair and replace it, if destroyed. The petitioners operated the properties which they held under the two leases through their joint venture, *244 High Lynn Property Account. The joint venture books were kept on an accrual basis and partnership returns for fiscal years ended April 30, 1956 through 1959 were filed with the Cleveland district director of internal revenue. The total cost basis of the two leases to High Lynn on November 1, 1952 was $239,865.35. The Deshler Hotel was built by the Deshler heirs. Lincoln-LeVeque interests own the Lincoln-LeVeque Tower, which is across the street from the Deshler Hotel. The Lincoln-LeVeque interests also own the underlying lease on the Deshler Hotel. Hilton hotel interests lease the Deshler Hotel and also lease sixteen or seventeen floors of the Lincoln-LeVeque Tower which is used for hotel room occupancy. The lease of the Lincoln-LeVeque Tower space expires soon. The Deshler Hotel obtained control of the parking areas across the street from the petitioners' two properties and adjacent to the Lincoln-LeVeque Tower. After obtaining the two properties in question Babin on behalf of the petitioners attempted to interest each of the Deshler Hotel and Lincoln-LeVeque Tower interests in purchasing the leases. Lincoln-LeVeque made an offer which the petitioners through was too low to consider. *245 The total rental for the buildings from the two leases, without deduction for lease rentals or administrative costs, is approximately $64,000 per year. The purchase money not for the stock of The Mills Real Estate Company, dated November 1, 1952, was for $345,000. It was reduced on the same date to $150,000, on a transfer of intangible property. The purchase money note and the written contract of November 17, 1952, both provided, in part, as follows: Interest at the rate of four percent (4%) per annum on the declining balance is to be accrued and paid on November 1, 1957. * * *
Any portion, or all of the principal, of this note may be prepaid at any time. In the event that the entire obligation is paid in full on or before November 1, 1957, interest on the entire note is to be waived and cancelled. The contract of November 17, 1952 provided that the note should contain a 30-day acceleration clause. The provision in the note was as follows: The entire principal sum and accrued interest due and payable hereunder shall become due and payable at the option of the holder hereof, without notice, on failure of the undersigned to pay any of said installments within thirty *246 (30) days after maturity thereof. The purchase agreement provided that the transaction was to be closed in the offices of the Deshler Hotel, Columbus, Ohio. The purchase agreement on its face indicates that it was drafted in the offices of Babin. The monthly payments on principal required by the note, were made by the petitioners and thus applied through October 1, 1957, reducing the principal balance due on the note to $100,833.33. The petitioners prior to November 1, 1957 notified the holder of the note that they would pay the remaining outstanding principal of the note in full. The parties agreed that the petitioners would have the same rights as if they had been made on November 1, 1957, notwithstanding actual payment was made on November 18, 1957. On that date, the petitioners paid $100,833.33 in full for all liability on the note. Interest did not accrue and was waived in accordance with the provisions of the note and the agreement of the parties as to the delayed payment date. The note was subscribed on the bottom as follows: November 15, 1957 Balance of Note on this date is $100,833.33; Upon payment of this sum through The Capital Bank all obligation for principal *247 and interest paid in full. Fred A. Simonsen Opinion This case is very much like David Dab, 28 T.C. 933, affd. 255 F.2d 788 (C.A. 2) where we held that a 99-year leasehold cannot be amortized or depreciated over the shorter estimated life of a building located on the leased property when it was acquired. In the opinion we stated: The 20-year period had no relevance to the length of the leasehold. It was merely an estimate of the remaining useful life of the building. The partnership had no depreciable interest in the building, it did not erect the building, nor did it own it; the building was contained on the leasehold at the time of consummation of the lease. It has been held that a taxpayer who has a leasehold on land and improvements but no depreciable interest in the improvements as such can neither deduct depreciation for a building contained on the leasehold nor use the life of the building as a base period over which to depreciate the entire leasehold. City National Bank Building Co., 34 B.T.A. 93, affd. 98 F.2d 216 (1938); cf. Weiss v. Wiener, 279 U.S. 333 (1929). The petitioners have pitched their *248 case on the opinion of the Court of Appeals for the Second Circuit, affirming this Court. That court noted that the record before the Tax Court was a scanty stipulation of facts and the testimony of a certified public accountant. However, the court of appeals suggested that a contrary result might have been reached if it could have been shown by evidence "that all, or any part, of the cost of the leasehold was intended to be apportioned to the building." It noted that none of the partners testified and that the only witnesses had no idea as to the intent of the partners when they made the purchase; that there was no evidence as to the size or condition of the building, the number of tenants, or the amount of rental income. The court of appeals refused to permit the petitioners to have the remand to supply this missing proof and affirmed this Court. The petitioners here have submitted evidence attempting to establish the facts which the court of appeals suggested might substantiate a claim for amortization of the cost of the 99-year lease over an estimated useful life of the buildings on the leasehold properties. They urge that they have established that the buildings on the leaseholds *249 are old, with a remaining economic life of 20 years; that the leasehold land alone does not have a rental value in excess of the $41,000 rent due under the leases; and that the leaseholds produce a net income after payment of the ground rent of $23,000 a year. We do not necessarily subscribe to the views expressed by the court of appeals in Dab v. Commissioner. In the case at bar, however, it is our view that even accepting the position suggested by the court of appeals, the petitioners have not recognized the potential value which is inherent in the leaseholds. The properties in question are located in the heart of the downtown business district of Columbus, Ohio. They are properties that had a likely future potential for expansion of adjacent hotel interests as well as being generally advantageously located. In addition to the business activity in the area, the State Capitol and other governmental offices are in the immediate vicinity. It is suggested that the downtown area of Columbus has deteriorated, but we believe from the pictures and the maps in evidence that the area is not showing evidence of decline. Moreover, if deterioration is thought to exist, we believe that judicial *250 notice can be taken of the efforts being made to rehabilitate and improve such areas, as well as of the general upward direction of the increase in values of property. See Great Northern Ry. Co. v. Weeks, 297 U.S. 135; Atchison, Topeka & Santa Fe Ry. Co. v. United States, 284 U.S. 248; Estate of William P. Allen, 6 T.C. 597. A witness for petitioners testified that they had approached one of the hotel interests, but stated that they would be interested in paying an amount so substantially below the petitioners' cost that the petitioners did not consider it. Nonetheless, we think that petitioners have not borne their burden of proving that the remainders of the 99-year leases [1] were without substantial potential value. On the record before us we think that it is evident that the petitioners have not shown that they intended only to acquire the buildings on the property and that portion of the 99-year leases which was measured by its estimated useful life of 20 years. On this conclusion and on the authority of our opinion in David Dab, supra, this issue is decided for the Commissioner. And see section 1.162-11, Income Tax Regs. *251 which states that the purchaser of a leasehold for a specified sum may take as a deduction an aliquot part of such sum each year based on the number of years the lease has to run. The remaining issue is whether the petitioners, which are on the accrual basis, are entitled to deduct annual interest on the note of November 1, 1952. The note itself and the purchase agreement both provide, as set forth in the findings, as follows: Interest at the rate of four percent (4%) per annum on the declining balance is to be accrued and paid on November 1, 1957. * * *
Any portion or all of the principal, of this note may be prepaid at any time. In the event that the entire obligation is paid in full on or before November 1, 1957, interest on the entire note is to be waived and cancelled. And the note also provides as follows: The entire principal sum and accrued interest due and payable hereunder shall become due and payable at the option of the holder hereof, without notice, on failure of the undersigned to pay any of said installments within thirty (30) days after maturity thereof. We *252 see no interpretation for these provisions other than that the payment of interest was based upon a contingency and no interest obligation was possibly accruable prior to November 1, 1957. Dixie Pine Products Co. v. Commissioner, 320 U.S. 516. The contingency of payment in full actually was satisfied, in accordance with modifications by the parties, and no interest ever became due or accruable. This issue is decided for the Commissioner. Decisions will be entered for the respondent. Footnotes
1. Both of the leases could be renewed for subsequent terms of 99 years each, forever.↩