[File No. 6650.]

THE STATE OF NORTH DAKOTA EX REL. ALVIN C. STRUTZ, Attorney General, Petitioner, v. A. J. HUBER, Auditor of Grant County, North Dakota, Respondent.

(291 N. W. 126.)

Opinion filed February 29, 1940.   On Rehearing April 1, 1940.

*Alvin C. Strutz,* Attorney General, and *C. F. Kelsch,* Assistant Attorney General, for petitioner.

*John F. Sullivan* and *W. H. Stutsman,* and *Emil Giese,* State's Attorney, for respondent.

Nuessle, Ch. J.   The state of North Dakota through its attorney general seeks in this proceeding to compel the respondent Huber, auditor of Grant county, to "1. Calculate the rate per cent necessary to raise the amount required to meet the various taxes levied by the state and local taxing boards on the assessed valuation of farm lands in said county as determined by the state board of equalization," and to "2. Extend and spread the taxes against all farmlands, in the county of Grant upon the assessed valuation thereof as determined by the state board of equalization; and that as soon as he has completed said tax list that he shall deliver the same to the county treasurer for the collection of such taxes as required by law."   To this end the relator presented his petition supported by affidavit to the district court of the

Sixth Judicial District and procured an order directed to the respondent to show cause why a peremptory writ of mandamus requiring him to do so should not issue. The respondent challenged the legal sufficiency of the petition by demurrer and motion to quash, and further set up the facts upon which he relied as warranting the denial of the relator's petition. The court considered the issues as made and presented by the pleadings and denied the application. Judgment was entered accordingly. Whereupon the relator perfected the instant appeal.

There is no dispute as to the facts, which may be stated substantially as follows: The taxable property of Grant county was duly assessed and equalized in the several taxing districts thereof. In due course, and in conformity with the requirements of the statute, such assessments were equalized by the board of county commissioners sitting as a board of equalization. Comp. Laws 1913, § 2138. The average value of farm and ranch lands was by this board fixed at $3.75 per acre. The respondent county auditor certified the list of property thus assessed and equalized to the state board of equalization. Comp. Laws 1913, § 2138. See, also, § 2092a5, 1925 Supplement to the 1913 Compiled Laws. The state board, taking into account the value of said property so assessed in and returned to it from Grant county, together with the values of the property assessed and returned in like manner from other counties in the state, equalized the same as between the counties and fixed the average value of the farm and ranch lands in Grant county at $7.50 per acre. Section 2141a2, 1925 Supplement. The report of the proceedings of the state board of equalization affecting the taxable property in Grant county was duly certified and returned to the respondent. Comp. Laws 1913, § 2142. In the meantime, and before the respondent had calculated the rate per cent necessary to raise the amounts required for the several taxing districts and extended and spread the taxes against the lands in Grant county on the valuations as determined by the state board of equalization (see § 2143, Comp. Laws 1913, and chapter 241, Session Laws 1929) various individual owners of real property in Grant county, together with the several taxing districts therein, presented their respective petitions to the board of county commissioners seeking to have the said real property revalued and their excessive taxes abated pursuant

to the provisions of chapter 225, Session Laws 1939. The board of county commissioners, taking cognizance of said petitions, ordered and directed the respondent not to calculate the rate per cent of taxes and not to extend and spread the same against the farm lands upon the valuations thereof as fixed by the state board of equalization, and proceeded to consider the said petitions and redetermine the values of the said real property. They found that the values as fixed by the state board of equalization were excessive, reduced the same to an average of $3.75 per acre, and ordered and directed the respondent to calculate the rate per cent of taxes on the values as thus reduced and to extend and spread the same at the rate thus calculated against farm lands on the values as redetermined by the board of county commissioners acting upon and under the petitions.

Thus the question for determination is as to the duty of the county auditor with respect to the calculation, spreading and extending of real estate taxes under the circumstances shown. On the one hand, the relator contends that it is the duty of the respondent to comply with the requirements of the Initiated Measure, adopted June 29, 1932 (Session Laws 1933, p. 493), § 2143, Comp. Laws 1913, and chapter 241, Session Laws 1929, and that he has not done so. On the other hand, the respondent contends that these statutory provisions are in effect so modified or repealed by the provisions of chapter 225, Session Laws 1939, that he need no longer comply with them under the circumstances in this particular case, but must accept the valuations as redetermined by the board of county commissioners and calculate the rate per cent of the various taxes and extend and spread the same so calculated, together with the state tax against farm lands, upon the valuations as thus fixed.

The duties of the respondent county auditor with respect to the matters here involved are purely ministerial. He has no discretion in the matter. See Murray v. Mutschelknaus, 70 N. D. 1, 291 N. W. 118. If he fails to perform them mandamus is the proper remedy to invoke as against him. Comp. Laws 1913, § 8457. The fact that the board of county commissioners has directed him to do otherwise is no excuse. The statute controls. Their action cannot override it. Const. § 173. So it becomes necessary to consider and construe the provisions of chapter 225, Session Laws 1939.

Chapter 225 is entitled "An act declaring all tax charges based on original final values of property assessed by local assessors, in excess of amount that would have been charged had said original final value been limited to the full and true value in money, null and void providing remedy to the taxpayer; and repealing all laws or parts of law in conflict therewith." Section one of said act provides that taxes against property valued by local assessors to the extent that said tax charges exceed the amount that 'said tax charge would have been had the original final determination of value been limited to the full and true value thereof in money, shall be null and void. Section two of the act declares who may apply for the relief provided by the act, to whom such application shall be made, and the time within which this may be done. Section three of the act defines the procedure to be followed. It provides that any person aggrieved and complaining on account of an excessive valuation may petition the board of county commissioners to make its order fixing the value of the property in question in money and "to *redetermine* any tax charges against such property to conform to the amount that would ultimately result from a reduction of the valuation thereof to the full and true then value thereof." It further provides that it shall be "the duty of the county board to hear and determine the petition and to make a finding of the full and true then value of said property in money. If said petition requires the determination of the tax charges it shall be the duty of the board of county commissioners to determine the amount of said tax by the application of and applying thereto the consolidated levy applied in said taxing district for each year in the petition referred to. Upon the receipt by the treasurer of the amount of taxes so determined as to any parcel of land . . . the county treasurer shall issue a tax receipt for each year for which payment is thus made and in its order the board of county commissioners shall provide that upon payment of the amount thus fixed and determined . . . *the balance of the tax charges for that year against such property shall be abated.*"

It is clear to us this statute contemplates that in those cases where the act is operative, the rate per cent already has been calculated and the tax levied and spread upon the basis of the value (reduced 50 per cent pursuant to the provisions of the Initiated Measure of June 29, 1932) returned by the state board of equalization. This is the pur-

port of the title of the act; the purport of the provisions of section one, wherein it is provided that the tax charges in excess of the amount that said tax charge *would have been* had the original final determination of value been limited to the full and true value thereof in money, shall be null and void; and the clear purport of those portions of section three of the act requiring that the board of commissioners shall *redetermine* the tax charges and that in its order fixing the amount of the tax the board must provide that upon the payment of such amount the *balance* of the tax charges shall be abated.

The legislature intended by chapter 225 to provide a remedy for those who are owners of or interested in real property overvalued for purposes of taxation. The language of the act is directed at the *excess* of the tax. Excess in what respect? Over what the tax charge *"would have been"* had it been imposed on the basis of the true value. The commissioners when petitioned are required to *"redetermine"* the tax charge. This language implies the tax has theretofore been determined. And, finally, in its order fixing the amount after such redetermination, the board must provide that the *"balance of the tax charge shall be abated."* What balance is this? It can only be the excess over—the difference between—the charge as redetermined and what the charge was as reckoned on the excessive valuation. Necessarily then the act contemplates that the auditor must have made his calculations both as to the per cent rate of the tax and as to the amount of the tax in dollars and cents on the values as returned to him by the state board of equalization, in the manner and at the time provided for by the statutes in effect prior to the passage of chapter 225, supra. There is nothing to indicate that the lawmakers intended there should be any deviation by him from the performance of the purely ministerial duties imposed upon him by the statute theretofore in effect. The contrary is evident.

Not only is the foregoing intent evidenced by the language of the act itself, but it is further evidenced when the application of the act is considered. Under its terms each property owner, each person having any interest in taxable property, and each taxing district, may apply for a revaluation and a redetermination of the tax charge after the original assessment becomes final. This assessment becomes final when the state board equalizes and certifies the county valuations. See

Murray v. Mutschelknaus, 70 N. D. 1, 291 N. W. 118, supra. This must be on or before September fifteenth of each year. See chapter 235, Session Laws 1929. Applications for relief under chapter 225 must be made within one year after such certification by the state board. So within this period there may be as many applications for such relief as there are taxing districts and individuals owning or having an interest in taxable property within the county. And under the terms of the act such applications may be made individually and at different times or collectively and simultaneously so there may be an application or applications every day within the period during which they may be made and up to the final day, to wit, one year from the date when the return is certified by the state board of equalization. Whenever an application for a revaluation is granted and the value is fixed as less than was returned by the state board, the total valuation in the county will be diminished. If in such case the rate per cent of the tax charge on such diminished valuation must be recalculated, then not only the total valuation but also the rate per cent of the tax charge will be constantly fluctuating as applications are considered and valuations are changed. Uncertainty as to the tax charges will necessarily result as well as lack of uniformity in such charges. It is beyond reason to believe the legislature intended that the statute should operate in this manner.

In view of the foregoing considerations we cannot escape the conclusion that the relator is entitled to the relief which he seeks and the writ must issue as prayed for.

The relator also has challenged the constitutionality of the statute on various grounds. Since, however, the question here is only as to whether the auditor must perform his ministerial duties in accordance with the requirements of the statute prior to the enactment of chapter 225, supra, it is neither necessary nor proper to pass upon these constitutional challenges. See Murie v. Cavalier County, 68 N. D. 242, 278 N. W. 243, and cases cited, and State ex rel. Stutsman v. Light, 68 N. D. 513, 281 N. W. 777, and authorities cited therein.

Judgment reversed and case remanded for further proceedings in conformity with this opinion.

MORRIS, CHRISTIANSON, BURKE, and BURR, JJ., concur.

NUESSLE, Ch. J. (on rehearing). On application of the respondent a rehearing in this case was ordered and a reargument had. We have fully considered the case after such reargument and are agreed that we should adhere to the conclusions stated in the opinion heretofore handed down.

MORRIS, CHRISTIANSON, BURR, and BURKE, JJ., concur.