[File No. 6720.]

R. A. WERNER, Respondent, v. HUGO A. RIEBE et al., Board of County Commissioners of Stutsman County et al., Appellants,

and

THE STATE OF NORTH DAKOTA, Doing Business as the Bank of North Dakota, and C. D. Drawz, Interveners and Appellants.

(296 N. W. 422.)

534

Opinion filed January 29, 1941.   Rehearing denied February 11, 1941.

*C. F. Kelsch,* Assistant Attorney General, *Robert Birdzell,* and *Russell D. Chase,* for appellants.

*Knauf & Knauf,* for respondent.

536

MORRIS, J. R. A. Werner, the petitioner herein, is the owner of nine tracts of land in Stutsman county. He brought these proceedings pursuant to the provisions of chapter 225, N. D. Session Laws 1939, to secure a reduction in the assessed valuation of his lands to the full and true value thereof in money; and to secure an abatement of all taxes levied thereon for the year 1939, based upon those portions of assessments in excess of the full and true value.

Upon a hearing of the petition to cut assessed valuations and abate the taxes, the county commissioners of Stutsman county denied the petitioner relief. He thereupon appealed to the district court. In that court the state of North Dakota, doing business as the Bank of North Dakota, intervened. It claimed an interest in the proceeding by virtue of the fact that it is the owner and holder of certificates of indebtedness issued by the state of North Dakota under the provisions of chapter 183, N. D. Session Laws 1937, and is also the owner of Capitol Building Fund certificates issued pursuant to § 14, chapter 205, N. D. Session Laws 1931.

One C. D. Drawz also intervened as a citizen and taxpayer of Stutsman county who has paid all of his taxes levied and assessed for the year 1939. He owns a half section of land in a township other than that in which the petitioner's lands are located. He is also the owner and holder of certain township bonds issued by one of the townships of Stutsman county. The defendants, consisting of the members of

the board of county commissioners and the county treasurer of Stutsman county, filed their answers in the district court, setting forth that the petitioner's property was assessed and valued by the local assessor according to the same standards of value as that used in assessing the property of other taxpayers of the same taxing district, and that the assessment was duly reviewed and equalized by the local boards of review and boards of equalization; and that the valuation thus arrived at is fair, reasonable, and nondiscriminatory when considered in relation to the valuation of like property in Stutsman county.

The defendants further set forth that the county has issued $180,000 in negotiable bonds pursuant to law and has provided for the collection of an annual irrepealable tax sufficient to pay the principal and interest thereon in accordance with the provisions of § 184 of the state Constitution, and that if reductions in assessments are made as prayed for by the petitioner, such reductions will result in creating a deficiency in sinking funds of the county and will impair the ability of the county to pay its constitutional obligations. The answer further sets out that if chapter 225, N. D. Session Laws 1939, is construed to entitle the petitioner to a redetermination of the full and true value of his property for the purposes of taxation without reference to the valuations of other properties similarly situated and without reference to the valuation of real property as equalized by the state board of equalization, the result will be violative of the uniformity requirement of § 176 of the state Constitution.

The defendants contend that chapter 225, N. D. Session Laws 1939, can and should be construed to apply only to cases of discriminatory valuations and then only to the extent of bringing about uniformity and equality. They also contend that if the chapter in question is held applicable to all excessive valuations of property without regard to any discrimination and without reference to like property similarly situated, it is violative of § 176 of the Constitution, and void. The intervener, state of North Dakota, doing business as the Bank of North Dakota, contends that the act in question will deprive the intervener of its property without due process of law in violation of § 13 and will impair the obligations of the intervener's contracts with the taxing districts in violation of § 16 of the state Constitution.

The intervener, Drawz, contends that the act violates §§ 13, 16, and

176 of the state Constitution. He also asserts that the act violates subdivision 27 of § 69, which prohibits the passage of special laws by the legislature, relinquishing, or extinguishing the indebtedness of any person or corporation to the state or any municipal corporation therein. It is claimed that the act is violative of the requirement of § 179 of the Constitution to the effect that all taxable property be assessed in the county, city, township, village, or district in which it is situated.

Chapter 225, N. D. Session Laws 1939, provides that

"1. Taxes Based on Valuations in Excess of Full and True Value Void. Any and all taxes levied and assessed against taxable property valued by local assessors, to the extent that said tax charges exceed the amount that said tax charge would have been had the original final determination of value been limited to the full and true value thereof in money, shall be null and void.

"2. Who May Object. Consideration of Application. Each individual property owner, and each person having an interest in taxable property valued by local assessors, either individually, or jointly, or collectively, including taxing districts as such, may within one year after any assessment becomes final, bring such proceedings as are herein provided for, or as may be provided for by law, to determine and limit the tax obligations of such property as provided for in Section one hereof, and each such proceedings shall be by the board, commission, commissioners, or any person having jurisdiction thereof, and the courts, decided, determined, and the valid tax determined as to the application thereof to the specific property or properties involved in said proceeding or proceedings and without reference to county necessities, or other municipal requirements, and without reference to the valuation applied or tax obligations charged against other properties."

Section 3 sets forth the procedure under which applications may be made and defines the duties of the board of county commissioners and the county treasurer. Section 4 provides that the failure of the petitioner to appear before any board of equalization or his failure to perform any other act shall not prejudice the petitioner's rights. Section 5 provides for an appeal to the district court where the matter is tried de novo. It is made the duty of the court "to fix and determine the proper and legal tax charges for any year or years as may be involved

in said petition." Section 6 provides for an appeal to the supreme court from any judgment of the district court.

The statute in question has been before this court in two cases. Murray v. Mutschelknaus, ante, 1, 291 N. W. 118; State ex rel. Strutz v. Huber, 69 N. D. 788, 291 N. W. 126. In Murray v. Mutschelknaus, supra, we held the statute to be wholly prospective in its operation and for that reason not applicable to 1938 taxes. In State ex rel. Strutz v. Huber, supra, we held that the act does not modify or repeal the provisions of the initiated measure adopted June 29, 1932. (N. D. Sess. Laws 1933, p. 493) § 2143, N. D. Comp. Laws 1913 or chap. 241, N. D. Sess. Laws 1929. The defendants contend that the statute must be construed to apply only to discriminatory assessments and that it only authorizes relief in cases where the complaining taxpayer's property is assessed higher than like property in the same taxing district. Both the wording of the act and the history of the basis of valuations of property for assessment purposes militates against this construction. Section 1 of the act pronounces null and void that portion of tax charges which "exceed the amount that said tax charge would have been had the original final determination of value been limited to the full and true value thereof in money." Section 3 requires the board of county commissioners after hearing the petition "to make a finding of the then full and true value of said property in money." Nowhere in the act do we find any provision for the comparison of values of property described in the petition with other property in the same taxing district.

An examination of the history of assessment provisions in this state discloses the reason why the legislature provided in chapter 225 for the full and true value of property as the basis for determining whether or not an assessment was excessive.

Section 176 of the Constitution of North Dakota originally required the taxing of property according to its true value in money. This requirement was omitted when § 176 was amended in 1914. The legislature, however, has consistently required that real property be assessed at a certain percentage of its "full and true value." See chapter 59, N. D. Session Laws 1917; chapter 220, N. D. Session Laws 1919; chapter 298 N. D. Session Laws 1923. (§ 2122a, Supp. to Comp. Laws). On June 29, 1932, the people approved an initiated

measure (N. D. Sess. Laws 1933, p. 493) which provided that "1. All property, real, personal and mixed, subject to a general property tax, not exempted by law or subject to any gross sales or other lieu tax shall be valued and assessed at fifty (50) per cent of the full and true value thereof, except farm buildings and improvements, which are hereby exempted from all taxes. Assessors and boards of review shall assess and return all taxable property at its full and true value, and it shall be the duty of the county auditor after equalization by the State Board of Equalization to make the computations necessary to reduce such assessed value to said fifty (50) per cent."

Thus it appears that the legislature and the people have consistently maintained the *true value* as the fundamental basis for tax assessments. If the assessing authorities have deviated from this value in fixing assessments, they have violated statutes of long standing and a principle of valuation that has long been established in this state. Chapter 225, N. D. Session Laws 1939, clearly does not permit any determination of value for assessment purposes to be considered under that statute other than true value. If it be that other property in the same taxing district has been overvalued, such overvaluation may not be used to justify an overvaluation of the petitioner's property under the guise of discrimination. If the taxing authorities have performed their statutory duty with respect to other property in the taxing district and have assessed it at its true value, there can be no discrimination in also assessing the petitioner's property at its true value. Such procedure in behalf of the petitioner will tend to eliminate rather than to create discrimination. If all of the land in any taxing district is assessed at its true value, there will be no discrimination.

The second proposition urged by the defendants is that this chapter, when construed to operate on the basis of true value and without reference to the value placed upon other like property in the same taxing district, violates the uniformity and equality provision of § 176 of the North Dakota Constitution which requires that, "Taxes shall be uniform upon the same class of property including franchises, within the territorial limits of the authority levying the tax."

This contention has been answered by what we have just said regarding discrimination. In view of the fact that this point is so

strongly urged by the defendants and the interveners as well, it may not be out of place to devote further discussion to it.

By the enactment of chapter 225 the legislature provided for the application to the assessment of taxable property generally, the same principle that was applied to the assessment of railroad property by the Supreme Court of the United States in Great Northern R. Co. v. Weeks, 297 U. S. 135, 80 L. ed. 532, 56 S. Ct. 426. In that case the North Dakota Board of Equalization (which assesses railroad property under § 179, N. D. Const.) fixed a value which the court held to be too high by ten million dollars. The court made no mention of the principle of equal taxation nor did it consider the question of discrimination as between the property of the Great Northern Railway Company and the property of other railroads similarly situated. The court pointed out that the state law requires that all property subject to taxation be assessed at its true value in money. The petitioner in that case did not allege that other property was not assessed at its full and true value and did not seek relief on the ground of discrimination. It rested its case wholly upon what it claimed to be the full and true value of its property. As to this value, the court said, "The full and true value of the property is the amount that the owner would be entitled to receive as just compensation upon a taking of that property by the State or the United States in the exertion of the power of eminent domain. That value is the equivalent of the property, in money paid at the time of the taking. Olson v. United States, 292 U. S. 246, 254, 78 L. ed. 1236, 1243, 54 S. Ct. 704. The principles governing the ascertainment of value for the purposes of taxation, are the same as those that control in condemnation cases, confiscation cases and generally in controversies involving the ascertainment of just compensation. West v. Chesapeake & P. Teleph. Co. 295 U. S. 662, 671, 79 L. ed. 1640, 1646, 55 S. Ct. 894."

Our legislature has permitted the consideration of "the average cash rental value" in determining true value. However, it does not follow that the statute is bad for that reason. The legislature may prescribe a reasonable method for determining value even though it differs from the method applied in Great Northern R. Co. v. Weeks, 297 U. S. 135, 80 L. ed. 532, 56 S. Ct. 426, supra. The argument in this case is not that the method of determining value is unreasonable. It is that no

assessment of individual property can be based upon true value alone without taking into consideration the valuations placed upon other like property.

In striking down the excess valuation of the property of the Great Northern R. Co. supra, the supreme court said, "The board (of equalization) persistently disregarded known conditions essential to the just ascertainment of value. While the vanishing of values described by respondents' witness, the reduction of the tax base from 75 per cent to 50 per cent, and the established limitations upon rates of taxation, justify diligence on the part of the assessing authorities that taxable property be assessed at full value, neither these nor any other conditions warrant or excuse arbitrary or excessive valuations. . . . The board's failure to consider the enormous diminution in value of petitioner's property caused by the 1929 collapse and the progress of the depression is, within the principles of our decisions, the equivalent in law of intention to make a grossly excessive assessment for 1933 in disregard of petitioner's rights under the due process clause of the Fourteenth Amendment. We need not consider whether the assessment is repugnant to the equal protection or commerce clause. Unquestionably, the assessment was made in plain violation of established principles that govern property valuation."

No system of valuation is infallible. From a practical standpoint, injustices are bound to arise in individual cases. The underlying objective of all real property taxation must be the achievement of equality in the distribution of the burden. Clearly, equal distribution can only come about by using some uniform method as a basis of assessment of property in each class. That basis has been definitely established in this state as the full and true value of the property. If, as has been argued, the assessing authorities have persistently disregarded the statutory mandates, this fact does not warrant or excuse arbitrary or excessive valuations. The legislature did not violate § 176 of the Constitution in affording relief to taxpayers either individually or by groups. The taxpayer whose property is overvalued and who does not avail himself of the remedy to have the overvaluation of his property corrected cannot complain of his more diligent fellow taxpayer who does avail himself of his rights. Neither can the county of Stutsman complain of the diligent taxpayer upon the ground that the exer-

cise of his diligence results in discrimination against the taxpayer who has not availed himself of the remedy afforded him. While there may be some discrimination in the actual amount of taxes paid upon property of the same relative value, there is no discrimination as to the rights and opportunities for relief afforded to the respective property owners. There is, therefore, no discrimination in the constitutional sense which would affect the validity of the act in question.

We have not overlooked Nashville, C. & St. L. R. Co. v. Browning, 310 U. S. 362, 84 L. ed. 1254, 60 S. Ct. 968, which the defendants assert modifies Great Northern R. Co. v. Weeks, supra. If such modification there be, it does not lessen the value of the principle applied in that case when enacted into a statute by the legislature. We are dealing here with the power of the legislature to provide for the correction of the action of assessment authorities to the end that assessments be based upon true value. We are not dealing with the constitutional invalidity of an overassessment as being violative of the Fourteenth Amendment to the Federal Constitution. We hold that the legislature may constitutionally afford the same relief to the owners of taxable property generally as was afforded by the court in Great Northern R. Co. v. Weeks, 297 U. S. 135, 80 L. ed. 532, 56 S. Ct. 426, supra.

The board of equalization levies the taxes for the support of the state government and certifies the rate to the county auditors. It is pointed out that this rate is determined with reference to the final assessed valuations of property throughout the state, and that the reductions of those valuations by proceedings had under chapter 225 will be disastrous to the income structure of the state. It is asserted that as a consequence of a large number of proceedings the functions of government will be impaired.

These arguments, while persuasive from a practical viewpoint, deal with the economic result of chapter 225 and may be properly addressed to the legislature since they involve matters of policy. They are not, however, persuasive on the question of constitutionality. We are deciding the question of whether the legislature had the constitutional power to enact the law in question and not whether the enactment of that law was advisable from a practical standpoint. The advisability of passing the law is purely a question for the legislature and this court

cannot strike down an enactment so long as the legislature stays within the limits of its constitutional power.

The interveners are holders of evidences of public debt for the payment of which petitioner's property is subject to taxation. They contend that chapter 225 will impair the obligations of their debt contracts and will deprive them of their property without due process of law.

In order to sustain their position the interveners must show that they have a vested interest in the valuations that will be reduced or property rights therein of which they will be deprived. It does not appear that they have either vested interests or property rights in excessive assessments. Their contracts, when made, could contemplate nothing other than that the debts which they represented would be paid out of funds raised by the taxes levied and assessed in a lawful manner. If, at the time the debts were incurred, tax officials ignored the mandates of the assessment statutes and placed excessive valuations upon taxable property, the holders of evidences of debt acquired no vested interest in such excessive valuations nor did they acquire property rights therein. If the fact be, as the interveners argue, that overassessment was a common practice and that any similarity between assessed value and true value was purely coincidental, that practice did not change the law nor does it render unconstitutional a legislative enactment that gives to taxpayers individually and collectively relief from the illegal though common practice where property has materially decreased in value since the debts were incurred, the holders of evidences of debt may not now insist that valuations for tax assessment purposes must be maintained at fictitious or erroneous and excessive values.

It is also claimed that the act in question permits the assessment of property in violation of § 179 of the Constitution. This section requires taxable property to be assessed in the county, city, township, village, or district in which it is situated. It refers to the original assessment of property. Chapter 225 does not purport to afford relief until there has been not only an original assessment but a final determination of values by the assessing authorities. In Murray v. Mutschelknaus, ante, 1, 291 N. W. 118, supra, we held that "the final determination referred to in this section must mean the determination arrived at when the regular course of assessment has been completed by

the certification of the state board of equalization." We hold that chapter 225 is not violative of § 179 of the Constitution.

The act in question does not violate ¶ 27, § 69 of the Constitution which prohibits the passage of special laws relinquishing or extinguishing the indebtedness of any person or corporation to the state or any municipal corporation therein. This law operates only upon the taxes to be derived from excessive and void valuations. The state or its municipal corporations do not become entitled to these excess taxes. They have not become a debt, consequently, there is no indebtedness to be relinquished or extinguished.

The trial court correctly construed the law. None of the constitutional challenges are sustained. The judgment therefore is affirmed.

BURR, Ch. J., and CHRISTIANSON, NUESSLE, and BURKE, JJ., concur.

MORRIS, J. (on petition for rehearing). A petition for rehearing has been filed by the defendants and interveners in which several points covered by the opinion have been reargued. In view of the vigor with which these points are pressed, further discussion is appropriate.

The assessing authorities are required to assess and return the property to be taxed at 100 per cent of its value. The final act of the assessing authorities in this regard is the certification of values by the board of equalization to the county auditor. The initiated measure adopted June 29, 1932, quoted at length in the foregoing opinion, requires the county auditor "to make the computations necessary to reduce such assessed value to . . . fifty (50) per cent." The county auditor also receives from the board of equalization the mill levy necessary to apply to the 50 per cent of the assessed value in order to provide the revenue needed by the state. He also has the amounts certified to him by the various taxing districts as being the money that they will require. From the certified amounts and the 50 per cent valuations he figures out the mill levies for the taxing districts. He then adds all the mill levies together including the state levy. The sum thus arrived at is the consolidated levy. The general tax for a specific piece of property is then determined by multiplying 50 per cent of the assessed value of that property by the consolidated levy.

Chapter 225, N. D. Session Laws 1939, pronounces void all tax charges in excess of "the amount that said tax charge would have been had the original final determination of value been limited to the full and true value," and affords relief, by petition to the board of county commissioners and appeal to the courts, that may be resorted to within one year after the certification of assessed values from the board of equalization to the respective county auditors. Under that act an owner of taxable property may apply for and be afforded relief through a reduction of an overassessment of his property after the county auditor has computed and applied the consolidated levy.

Because of the process thus described, it is insistently argued that chapter 225 is in conflict with the initiated measure. The interveners, while admitting that they have no vested rights in excessive assessments and void taxes, contend that they do have vested rights in assessment statutes and procedure that entitle them to the levy of annual taxes for the payment of principal and interest of their evidences of debt as required by § 184 of the North Dakota Constitution.

In State ex rel. Strutz v. Huber, 69 N. D. 788, 291 N. W. 126, we held that chapter 225 does not modify or repeal the provisions of the initiated measure with respect to the duties of the county auditor, we said: "There is nothing to indicate that the lawmakers intended there should be any deviation by him from the performance of the purely ministerial duties imposed upon him by the statute theretofore in effect. The contrary is evident."

Chapter 225 does not interfere with any of the acts required to be performed under the initiated measure. If, however, the provisions of the initiated measure are violated by the assessing authorities so that the resultant valuation is in excess of 50 per cent of the "full and true value," relief is afforded. Chapter 225 does not conflict with, repeal, or modify the initiated measure, but if the valuations which that measure contemplate are exceeded, the taxpayer is afforded relief from the error.

Referring again to the claim of the interveners that their vested rights are disturbed, we fail to see the distinction that they attempt to draw in disclaiming vested rights in overassessments while insisting upon vested rights in a taxing process which permits the exaction of taxes based upon overassessments. The argument seems to be based

548

chiefly upon the practical situation that relief may be widespread. If that be true, it merely indicates that the errors are numerous. It would seem that the same constitutional principles are applied whether there be but one error or many. It would further appear that if the courts have the power to grant relief from an overassessment, as was done in Great Northern R. Co. v. Weeks, 297 U. S. 135, 80 L. ed. 532, 56 S. Ct. 426, cited in the foregoing opinion, without violating the Constitution, that the legislature may likewise exercise that power. The argument that after the levy has been spread, relief cannot be afforded to the property owner because of the vested rights of the holders of evidence of public debt when carried to its logical conclusion would result in precluding relief from levies that were unconstitutional as to the individual taxpayer because they were discriminatory or confiscatory. We are unimpressed by the argument which leads to the reductio ad absurdum that it would be unconstitutional to grant relief from an unconstitutional levy.

The interveners would invoke the rule that the law of the land in existence at the time the contract was made forms a part of the contract. With that rule we wholly agree. Chapter 225 does not infringe upon it. The law of the land at the time the interveners obtained their debt contracts required that property be assessed on the basis of its true value. If the law was being violated at the time the contracts were entered into, no right to continue the violations became a part of their contract.

It is argued that the granting of relief under chapter 225 violates the requirement of § 184 of the North Dakota Constitution, that provision be made at or before the time of incurring an indebtedness, "For the collection of an annual tax sufficient to pay the interest and also the principal thereof when due, and all laws or ordinances providing for the payment of the interest or principal of any debt shall be irrepealable until such debt be paid." That section does not require that an equal amount be collected each year for the payment of a specific debt. Neither is such a result implied. It is the constitutional duty of the taxing officials to levy annually such sums as will be reasonably adequate for debt service. If by reason of errors in assessment or other mistakes, too small a sum is collected, the deficit thus occurring does not necessarily render the laws under which it

occurs unconstitutional. The deficit may be made up in succeeding years. There are no limitations, either in amount or in mills, on levies that may be made for debt service applicable either to the state or its subdivisions. Chapter 225 does not repeal directly or by implication any law or ordinance contemplated by § 184. Rehearing denied.

BURR, Ch. J., and CHRISTIANSON, NUESSLE, and BURKE, JJ., concur.