Edward A. KAISERSHOT, Plaintiff and Appellant,

v.

GAMBLE–SKOGMO, INC., a Corporation, Defendant and Respondent.

No. 7823.

Supreme Court of North Dakota.

May 25, 1959.

T. F. Murtha, Dickinson, for plaintiff and appellant.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, for defendant and respondent.

STRUTZ, Judge.

This is an appeal from an order sustaining a demurrer to the plaintiff's complaint, all pleadings having been served prior to July 1, 1957, when demurrers were abolished by the adoption of the North Dakota Rules of Civil Procedure.

The plaintiff became a retailer of farm implements, machinery, and parts, for which the defendant was the wholesaler, under a contract entered into with the defendant. Several years later, the defendant desired to make other provisions for the retail sale of its farm implements, machinery, and repairs, and gave to the plaintiff notice that it was cancelling or discontinuing his contract as such retailer. The defendant made no offer to take over the balance of the farm implements, machinery, and repair parts remaining in the plaintiff's possession at the time of such cancellation.

The plaintiff's complaint is based on Sections 51–0701, 51–0702, and 51–0703 of the North Dakota Revised Code of 1943.

Section 51–0701 provides that when a person engaged in selling farm implements, machinery, and repair parts enters into a contract with a wholesaler, manufacturer, or distributor of such farm implements, machinery, and parts, and such wholesaler, manufacturer, or distributor thereafter desires to cancel the contract, such wholesaler, manufacturer, or distributor, as a condition precedent to such cancellation or discontinuation, shall pay to such retailer, unless the dealer shall desire to keep such merchandise, a sum equal to seventy-five per cent of the net price of all farm implements, machinery, and repair parts in stock at the time of such cancellation. Such statute further provides that, upon such payment, title shall pass to the manufacturer, wholesaler, or distributor, and such manufacturer, wholesaler, or distributor shall be entitled to possession thereof.

Section 51–0702 provides for the manner in which the price of such farm implements machinery, and repair parts still in the possession of the retailer at the time of cancellation of his contract is to be determined; and Section 51–0703 provides for the remedy of the retailer if the manufacturer, wholesaler, or distributor refuses to make payment to the dealer, and provides for the bringing of a civil action by the retailer for seventy-five per cent of the net price of such farm implements, machinery, and repair parts as the retailer may have on hand at the time of the cancellation of his contract.

The plaintiff's complaint alleges that the parties entered into a contract in November of 1949; that in 1951 the defendant discontinued the contract and that, upon discontinuance of his contract, the plaintiff had on hand $1,500 worth of parts and $10,000 worth of farm implements; that the defendant made no settlement or payment to the plaintiff, as provided by law on the discontinuation of such contract, and that as to the farm implements the plaintiff "* * * tried to get the defendant to take them back at seventy-five per cent and was unable to do so."

The plaintiff thereupon proceeded to sell the farm implements and machinery and realized about sixty per cent of the net price of such implements from such sale. The plaintiff either was unable to dispose of any of the repair parts or made no effort to do so, since the complaint alleges that the plaintiff has all of such parts in his possession.

The plaintiff's complaint is for seventy-five per cent of the wholesale value of the repair parts and for the difference between seventy-five per cent of the value of the farm implements and machinery, to which the plaintiff claims he is entitled under the above statute on cancellation of his contract, and sixty per cent of such value, the amount which plaintiff realized from the sale of such farm implements and machinery on defendant's failure to pay to the

plaintiff the seventy-five per cent on cancellation of the contract.

The defendant demurred to the plaintiff's complaint on the ground that the complaint failed to state a cause of action. An order sustaining such demurrer was entered by the trial court, and the plaintiff thereupon appealed to this court from such order.

■ Generally existing statutes and the law of the land at the time a contract is made become a part of such contract and must be read into it just as if an express provision to that effect were expressly incorporated therein. Dunham Lumber Co. v. Gresz, 71 N.D. 491, 2 N.W.2d 175, 141 A.L.R. 60; State ex rel. Cleveringa v. Klein, 63 N.D. 514, 249 N.W. 118, 86 A.L.R. 1523; Werner v. Riebe, 70 N.D. 533, 296 N.W. 422, 156 A.L.R. 1254.

■ An order sustaining a demurrer is an appealable order. Sec. 28–2702, Subsec. 4, NDRC 1943.

■ The trial court, in its order sustaining defendant's demurrer, did not give the plaintiff leave to plead over, and the plaintiff made no application for permission to do so. Where a demurrer to a complaint is sustained, and the plaintiff does not apply for leave to amend his complaint, he is deemed to have elected to stand on the complaint as originally served. Iowa & Dakota Tel. Co. v. Schamber, 15 S.D. 588, 91 N.W. 78.

■ Since a demurrer reaches only those defects in a complaint which are apparent on its face, and since the courts have no right to go outside of the pleadings for information foreign to the record, if a demurrer to the plaintiff's complaint is to be sustained such defects must appear on the face of the complaint. Schnoor v. Meinecke, 75 N.D. 768, 33 N.W.2d 66.

The plaintiff's complaint, after alleging that the defendant is a corporation, that the plaintiff was a dealer, and that under a contract with the defendant the plaintiff had agreed to buy all of his implements and parts from the defendant, further alleges:

"IV.

"That in 1951 the above named defendant discontinued said contract; that prior to that, said plaintiff was to handle Cockshutt products, but in that year Cockshutt products were taken away from the plaintiff and given to somebody else;

"V.

"That Secs. 51–0701 and 51–0702 of the North Dakota compiled laws for 1943 were enacted to cover the situation;

"VI.

"That upon the discontinuance of this contract, plaintiff had on hand $1500.00 worth of parts (wholesale price), and that no settlement or payment has ever been made for the same, although the plaintiff demanded the same and is willing to surrender the parts for the sum of 75% of $1500.00, or $1125.00.

"VII.

"That as to the implements on hand at the time of the discontinuance of the contract, plaintiff had on hand approximately $10,000.00 of implements on hand and he tried to get the defendant to take them back at 75% and was unable to do so;

"VIII.

"That thereupon he sold the implements at about 60% of $10,000.00 so that there was a loss of $1500.00 on the sale of the implements by reason of the failure of the defendant to take the implements off his hands at 75% of wholesale value, wherefore, demand has been made for said sums and no payment has been made, * * *."

Plaintiff then prays for judgment for seventy-five per cent of the wholesale value of the repair parts and the difference between sixty per cent of the wholesale value and seventy-five per cent of the wholesale value of the farm implements on hand at the time of the discontinuation of this contract.

Does this complaint state a cause of action?

Section 51–0701 of NDRC 1943 provides in part:

"Whenever any person, firm, or corporation engaged in the business of selling and retailing farm implements and repair parts for farm implements, * * * enters into a contract with any wholesaler, manufacturer, or distributor of farm implements and machinery or repair parts for farm implements and machinery, * * * and such wholesaler, manufacturer, or distributor desires to cancel or discontinue the contract with such retailer, such wholesaler, manufacturer, or distributor, as a condition precedent to such cancellation or discontinuation, shall pay to such retailer, unless the dealer should desire to keep such merchandise, a sum equal to seventy-five percent of the net price of all farm implements and machinery and repair parts for farm implements and machinery in stock, * * * Upon the payment of the sum equal to seventy-five percent of the net price of such farm implements, farm machinery, and repair parts, * * * the title to such farm implements, farm machinery, and repair parts, * * * shall pass to the manufacturer, wholesaler, or distributor making such payment, and such manufacturer, wholesaler, or distributor shall be entitled to the possession of such farm implements, * * * or repair parts therefor."

Thus, under the provision of the statute in question, when the plaintiff's contract was discontinued by the defendant, the plaintiff had two remedies. Either he could make the defendant take the farm implements, machinery, and parts which he still had on hand at the time of such cancellation, and pay to the plaintiff seventy-five per cent of the net price of such merchandise, or plaintiff could elect to keep the merchandise. In other words, he could either treat the property as the property of the defendant and bring an action against the defendant for seventy-five per cent of the net wholesale price of such implements and repair parts, or he could keep the merchandise and treat it as his own.

Plaintiff alleges that, as to the farm machinery and implements, he first "tried to get the defendant to take them back, and was unable to do so." Thus the plaintiff at first apparently intended to elect to exercise his right to make the defendant take the merchandise and pay him, as retailer, seventy-five per cent of the wholesale value. But if plaintiff did make such an election in his own mind, there is no allegation that he did anything thereafter to carry out such election. After his decision to make the defendant take back the merchandise, his future conduct should have been consistent with such declared intention.

However, plaintiff's conduct was wholly inconsistent with any intent to compel defendant to take back such merchandise. He then treated the major portion of such merchandise as his own. In his complaint the plaintiff alleges that he sold all of the farm implements and machinery "at about 60%."

■ We do not believe that the plaintiff could dispose of a portion of the machinery or parts, at a price which he himself would determine, and then force the defendant to take the balance under the provisions of the statute. We believe the sale of the farm machinery was an election on the part of the plaintiff "to keep such merchandise," which he had the right to do under the statute. If this court were to hold that the contract is divisible and that the plaintiff might retain the farming equipment and

farm machinery and compel the defendant to take back the repair parts, then it would be possible for the plaintiff to keep the most valuable farm machinery, sell it to his friends at a price far below its real value, and compel the defendant to pay the difference between what he realized from such transaction and the seventy-five per cent to which he was entitled under the provisions of the statute.

A party cannot take contrary positions in a matter of this kind. When he has the right to choose one of two remedies under a single contract, and the two remedies are so inconsistent that asserting one involves a repudiation of the other, then his deliberate choice of one and his subsequent conduct in carrying out that choice will preclude him thereafter from going back and electing to pursue the other. Roney v. H. S. Halvorsen Company, 29 N.D. 13, 149 N.W. 688.

Where one contract covers both machinery and parts, it is not severable unless its terms specifically make it so. If we were to hold that the plaintiff's rights under the statute are divisible so that he could elect to retain a portion of the property and elect to compel the defendant to take back and pay for the balance, there would be nothing to prevent the plaintiff from electing to keep the new farm machinery and forcing the wholesaler to pay for obsolete parts and machinery. What would prevent another retailer, in a future action, under similar circumstances, from maintaining, for example, that he should be allowed to keep the tractors, for which there might be a good market, and compel the wholesaler to take back the machinery and parts for which there might be no market?

We therefore conclude that the plaintiff's rights under the statute in question were not severable. The plaintiff had the right to compel the defendant to take back such farm implements and machinery and repair parts, or he could "desire to keep such merchandise." Obviously the intent of the Legislative Assembly in providing that the dealer could, if he desired, "keep such merchandise," was to give him a right to either keep all of the implements, machinery, and parts which he had under the contract or to have the wholesaler take them all back. Having by his actions in disposing of the farm implements and machinery elected to treat the property as his own, the plaintiff cannot now come in and demand that the defendant take back the merchandise which he could not sell. Generally, the doctrine of election of remedies rests upon the principle that a party may not take contrary positions and that where he has the right, as in this case, to treat the property as that of the defendant and sue for a given portion of its value, or where he has the right to elect to retain the property, such choices are so inconsistent that asserting one choice involves a refusal of the other. The deliberate choice of one will preclude the party from thereafter going back and choosing the other.

The sale of the farm machinery and implements was such a deliberate choice that the plaintiff cannot thereafter go back and choose to force the defendant to accept the balance of the merchandise which he has on hand. Thus, where the plaintiff had two modes of redress under one contract, he could not elect to keep a part of the merchandise, the machinery, and compel the defendant to take back the balance.

The plaintiff argues that he did not make a choice in selling the farm machinery and equipment, but that such farm machinery and equipment was sold to mitigate damages. If plaintiff, under one contract with the defendant for sale of machinery and parts, had one choice, either to keep the merchandise or to compel the defendant to take it all back, no question of mitigation can arise. The plaintiff owed to the defendant no duty to mitigate the damages.

The statute fixes the amount which the defendant owed the plaintiff on

discontinuation of the contract. The defendant could have had title to the property in plaintiff's possession at any time that it paid for it, as provided by the statute. Where the party whose duty it is to perform under a contract has equal opportunity for performance and equal knowledge of the consequences of nonperformance, he cannot be heard to say that plaintiff should have performed for him. Thus the plaintiff had no duty to attempt to perform for the defendant, or to mitigate his damages. 15 Am.Jur., Sec. 30, p. 427.

The defendant had equal opportunity with the plaintiff to dispose of the merchandise, and had equal knowledge of the consequences of not doing so. Since the statute specifically provides that the plaintiff might elect to retain such merchandise, his deliberate act in disposing of the greater portion of it was an election to retain the property, and the defendant thereafter was under no obligation to pay for such part of the merchandise as the plaintiff was unable to sell or dispose of.

The defendant and respondent challenges the constitutionality of the law which compels the wholesaler and distributor to take back and pay for such farm implements, machinery, and parts which may still be in the hands of the retailer on cancellation of his contract by the wholesaler and distributor. Courts will not pass upon the constitutionality of an act unless a decision upon that very point is absolutely necessary for a determination of the case before it. Therefore, we do not pass on the constitutionality of this statute since a decision on that point is not necessary for a determination of this case. State v. Amerada Petroleum Corp., N.D., 71 N.W. 2d 675; Knowlen v. Lahr Motor Sales Co., 59 N.D. 404, 230 N.W. 213; State ex rel. State Bank of Streeter v. Weiler, 67 N.D. 593, 275 N.W. 67.

The order of the district court sustaining the demurrer to the plaintiff's complaint is affirmed.

SATHRE, C. J., and MORRIS, BURKE and TEIGEN, JJ., concur.