Sherman **LILLETHUN**, Plaintiff
and Appellant,

v.

**TRI–COUNTY ELECTRIC COOPERATIVE,
INC.**, Defendant and Respondent.

Civ. 8390.

Supreme Court of North Dakota.

July 7, 1967.

Duffy & Haugland, Devils Lake, for plaintiff and appellant.

Fabian Noack, Carrington, and Mark F. Purdy, Minot, for defendant and respondent.

STRUTZ, Chief Justice.

The defendant co-operative provides electric energy in a number of counties in central North Dakota, including the county of Foster and the town of McHenry in that county, where the plaintiff is a merchant. The defendant is the only supplier of electric energy in the area, and the plaintiff is compelled to get his power from this source. As such user of the defendant's power, the plaintiff is a member of the defendant co-operative. The record discloses that his use of power is constant from month to month.

The defendant has established various classifications for rate purposes, and all of its users are listed under one of these classifications. Three classifications have been established, which are designated as "Commercial," "Regular," and "Combination." Certain variations from these classifications also are provided for, as, for ex-

ample, an all-electric rate applicable to farmers provided they have a water heater of thirty gallons capacity or larger.

The plaintiff uses electric energy from the defendant for his food locker plant, for his hardware store, for a grocery store, and for his apartment. He is furnished this energy on a 220-volt, one-phase connection. All of the plaintiff's power is measured on a single meter, and all of the power used was charged to him under the Commercial rate. The plaintiff requested a change to the rate called "Combination Rate," which is a lower rate than Commercial. The trial court found for the defendant, and, from the judgment entered on such finding, the plaintiff has appealed to this court, demanding trial de novo.

The plaintiff contends that the defendant has no authority to make the different classifications which it has established for the various member users of its energy. He points out that all of such users are members of the co-operative and, under the articles of incorporation and the bylaws of the defendant, there is no authority to classify member users or to charge them different rates. He further contends that the bylaws and the articles of incorporation form the entire contract between the defendant co-operative and the member users, and that the bylaws and articles of incorporation do not permit or authorize any classification of the members of the defendant.

■ It is true that the bylaws and the provisions of the articles of incorporation do constitute a contract between the defendant co-operative and the individual patrons. The bylaws specifically so provide, for they read, in part:

"The patrons of the Cooperative, by dealing with the Cooperative, acknowledge that the terms and provisions of the Article of Incorporation and By-Laws shall constitute and be a contract between the Cooperative and each patron, and both the Cooperative and the patrons are

bound by such contract, as fully as though each patron had individually signed a separate instrument containing such terms and provisions. The provisions of this Article of the By-Laws shall be called to the attention of each patron of the Cooperative by posting in a conspicuous place in the Cooperative's office."

The plaintiff further contends that the defendant has classified its members and has charged the plaintiff and a few others a higher rate than has been charged members placed in other classifications; that, had the plaintiff been charged the same rate as that charged the majority of the members of the defendant co-operative, he would have paid a total of $1,041.97 less than he has paid under the classification made by the defendant; that the classification of its member users by the defendant is unlawful and unauthorized; and that, as a result, the plaintiff is entitled to receive a patronage credit for the excess so paid by him.

The decision in this case thus will turn on the question of whether the articles of incorporation and the bylaws of the defendant co-operative are the entire contract between the parties, or whether the statutes enacted by the Legislative Assembly also become a part of the contract between the co-operative and the patron. It is clear that, if we consider only the articles of incorporation and the bylaws, the plaintiff must prevail, for the defendant co-operative would have no authority to make a reasonable classification of its membership and to fix different rates for the various classifications.

█ This court has held that, as a general rule, contracting parties enter into their contract in reference to existing law, and that all relevant existing laws at the time of the contract become a part of the contract and must be read into it. In State ex rel. Cleveringa v. Klein, 63 N.D. 514, 249 N.W. 118, 86 A.L.R. 1523, we said that the law of the land in existence at the

time a contract is entered into forms a part of that contract the same as if it were expressly incorporated therein, and the obligations of the contract are determined by the law in force at the time it is made.

█ This seems to be the general rule in other jurisdictions. See 17 Am.Jur.2d, "Contracts," Section 257, page 654. See also 17A C.J.S. Contracts § 330, page 295, where the author says that, generally, the law applicable thereto at the time and place of its making is as much a part of the contract as if it were expressly incorporated in the contract.

█ Thus the contract between the plaintiff and the defendant in this action is not to be determined solely by the provisions of the bylaws and the articles of incorporation, but by the law in force at the time the contract was entered into.

The defendant co-operative derives its powers under authority of Chapter 10–13, North Dakota Century Code, relating to electric co-operatives, and under the provisions of Chapter 10–15, North Dakota Century Code, relating to co-operatives generally. Section 10–13–01, which sets forth the purposes for which an electric co-operative may be organized, provides that such an organization may be established and operated "under the general laws governing co-operatives and this chapter".

Section 10–13–03, North Dakota Century Code, sets forth the powers which electric co-operatives are given by the law. Subsection 8 of that section provides that an electric co-operative shall have the power—

"8. To fix, regulate, and collect rates, fees, rents, or other charges for electrical energy and other facilities, supplies, equipment, or services furnished by it; * * *"

The defendant contends that the power to "fix, regulate, and collect rates" gives to the electric co-operative the power to make reasonable classification of its member users. The plaintiff, on the other hand,

contends that this provision merely gives the co-operative the power to fix, regulate, and collect rates, but that such rates must be the same to all members.

■ Chapter 10–15, North Dakota Century Code, sets forth the general law referring to co-operatives, the provisions of which chapter are applicable to electric co-operatives. Section 10–15–03(12) of that chapter specifically provides that, unless otherwise provided by its articles, a co-operative may—

"12. Exercise all powers necessary or convenient to effect its purposes."

■ It would appear that a reasonable classification of members of an electric co-operative is not only convenient but absolutely necessary to effect the purposes of the co-operative. If that is true, then such classification is justified. The record in this case shows that while the plaintiff receives one-phase service, of his own choice, three-phase service is available to him if he desires it. Other Commericial users in McHenry have three-phase service. The availability of this service is one of the factors that was taken into consideration in setting up the Commercial classification. The record also shows that, in case of interruption in service due to power failure, Commercial accounts receive priority over all other classifications in the restoration of service. The record further shows that Commercial accounts generally have electric motors which operate on a demand basis; that this type of service requires, on the average, a greater investment by the supplier of energy in transformation and in furnishing the electricity to the consumer; that the consumers who are classified "Commercial" have certain other advantages over other classifications. Thus the defendant maintains that the classification is both reasonable and justified.

The plaintiff contends, however, that for various reasons, including the fact that he is receiving power for his three businesses and for his apartment on one meter, it does not cost the defendant as much to furnish power to him as it does to other users who are classified as "Commercial"; that therefore, under the defendant's own bylaws, which form the contract between the parties, the plaintiff is entitled to a capital credit for the excess paid by him over and above the actual cost of furnishing the energy to him. He points out that the defendant's bylaws require it to operate on a nonprofit basis; that the co-operative is obligated to pay by credits to a capital account for each patron because the bylaws specifically provide: "The Cooperative is obligated to pay by credits to a capital account for each patron all such amounts in excess of operating costs and expenses."

■ The plaintiff's contention thus is that the account of each patron must be considered individually and separately, and the cost of furnishing energy to him individually must be determined by the defendant; that whether the defendant is making any profit must be determined from each individual account; and that a patron cannot be placed in a class and the cost of furnishing energy to the class be applied in determining whether such patron is paying an amount in excess of operating costs and expenses.

A reading of the bylaws would indicate that there is some merit to the plaintiff's contention, for the bylaws do provide that the cost of furnishing power to each patron must be determined. But the record also shows that it is absolutely impossible to break down the cost of furnishing service to each individual consumer of the hundreds of consumers served by the defendant; that it is necessary to fix classifications on a general basis, depending upon the business and the service available to the consumer; that the various users are placed in categories or classifications depending upon such business and the type of service which is furnished to such consumers and the advantages which such classification gives them. All users falling into the various categories are treated alike, even though

their individual needs and requirements within the classification may differ somewhat.

The record further discloses that the defendant informed the plaintiff that it was impossible to give him a different rate for his various businesses and for his apartment unless the plaintiff would meter his residence separately from his other uses. The plaintiff refused to do this.

We believe that, although the requirements and consumption of energy by some users may be such that the defendant makes a slight profit on certain individual accounts, each individual account cannot possibly be considered separately. The defendant has hundreds of users to whom it furnishes power, and requiring the defendant to consider the individual accounts separately would make the operation of the defendant's business and the bookkeeping for the business so burdensome that it could not be carried on.

It is also true that the plaintiff actually is receiving only single-phase service, but the businesses he operates fall within the classification where three-phase service is available and which he can have on notice. Not only is three-phase service available to him, but certain other advantages given to the class to which he belongs are available to and actually are enjoyed by him.

█ We believe that the amount which the defendant is obligated to pay for a patronage capital, under a reasonable interpretation of the bylaws, would be such sum as the individual consumer, in any reasonable classification, pays in excess of the operating costs and expenses for energy furnished to the classification to which he belongs. Thus, if there is an excess above operating costs and expenses for furnishing power to the class to which a consumer belongs, each member of that class should be credited on his capital account with the amount arrived at by taking the total amount of energy used by such patron and comparing it to the total amount of energy used by all patrons in the classification, and crediting each patron on a pro rata basis. The account of each individual consumer, however, cannot be considered separately. If the classification is reasonable and justified, as we believe it is in this case, his account must be considered on the basis of the class to which he belongs.

We find that the plaintiff has failed to establish that the classifications which the defendant has adopted are unreasonable and based on conditions and circumstances which make its classifications unjustified under the law. The plaintiff has three-phase service avilable to him if he desires it. In case of interruption of service due to power failure, his businesses are given priority over other users in restoration of service. He himself has determined that he does not want to install a separate meter for his residence.

█ We further find that the classifications fixed by the defendant, under the record before us in this case, were necessary and convenient to effect the purposes of the defendant and were therefore justified under the provisions of Section 10–15–03(12), North Dakota Century Code.

█ The burden being on the plaintiff to establish, by a fair preponderance of the evidence, that the circumstances and conditions do not justify the rate classifications which were adopted, and the plaintiff having failed to establish such claims, the judgment of the district court is affirmed.

PAULSON, KNUDSON and ERICKSTAD, JJ., concur.

TEIGEN, Justice (dissenting).

I dissent. I believe that the Articles of Incorporation and the Bylaws of the defendant co-operative are the entire contract between the parties, and that the statutes to which the majority allude are not a part of the contract between the cooperative and the patron. The rule stated by the majority

that "The law of the land in existence at the time a contract is entered into forms a part of that contract the same as if it were expressly incorporated therein, and the obligations of the contract are determined by the law in force at the time it is made" is a sound rule of law in proper situations. We have so held many times. State ex rel. Cleveringa v. Klein, 63 N.D. 514, 249 N.W. 118, 86 A.L.R. 1523; Baird v. Gray, 63 N.D. 640, 249 N.W. 718; Werner v. Riebe, 70 N.D. 533, 296 N.W. 422, 156 A.L.R. 1254; Dunham Lumber Co. v. Gresz, 71 N.D. 491, 2 N.W.2d 175, 141 A.L.R. 60; Kaisershot v. Gamble-Skogmo, Inc., N.D., 96 N.W. 2d 666; Shimek v. Vogel, N.D., 105 N.W.2d 677; Ireland's Lumber Yard v. Progressive Contractors, N.D., 122 N.W.2d 554. However, the rule is limited to laws which in a direct or necessary legal operation control or affect the obligation of such contract, and care should be taken that application of the rule is not extended to lengths beyond its purpose. 17A C.J.S. Contracts § 330. The statutes of North Dakota authorizing the formation of co-operative corporations provide they shall be organized and operated within the bounds set by statutory limitations. These statutes limit the scope of their operation to the purposes stated therein, and limit the powers to those granted. An electric co-operative corporation is authorized by Section 10–13–03(8), N.D.C.C., to fix, regulate, and collect rates for electrical energy furnished, but the statute does not direct an electrical co-operative corporation to fix classifications of rates. Section 10–13–06, N.D.C.C., provides that the revenues of an electrical co-operative corporation not required for the cost of operation, maintenance, and for the creation of reserves, shall be returned from time to time to the members of the co-operative in cash, in abatement of current charges for electrical energy, or otherwise, as the board of directors may determine, on a pro rata basis, according to the amount of business done with each during the period. The plaintiff has not suggested that an electrical co-operative cannot establish classification of rates, or that

this Court may review the classifications made. The plaintiff bases his case on the power of the court to enforce the contractual relation between these parties. It is my opinion that the contract is established by the Articles and Bylaws, and is clear, unambiguous, and within the bounds of the statutes. The question before us is not what the co-operative may have provided in its Bylaws, nor whether provisions must be integrated into the contract by force of the statute, but whether the co-operative has lived up to the provisions of the contract between it and this plaintiff as that contract is set forth in the co-operative's Articles and Bylaws. The statutes which the majority cite are not regulatory statutes, but merely prescribe the power which an electrical co-operative has and may exercise if it so desires. The instant contract was made within the field of the permissive legislation and is not repugnant to nor in conflict with the statutes.

The salient parts of the contract state as follows:

Section 1.

The Cooperative shall at all times be operated on a cooperative non-profit basis for the mutual benefit of its patrons. No interest or dividends shall be paid or payable by the Cooperative on any capital furnished by its patrons.

Section 2.

In furnishing of electric energy the Cooperative's operations shall be so conducted that all patrons will through their patronage furnish capital for the Cooperative. In order to induce patronage and to assure that the Cooperative will operate on a non-profit basis to all its patrons for all amounts received and receivable from the furnishing of electric energy in excess of operating costs and expenses properly chargeable against the furnishing of electric energy. All such amounts in excess of operating costs and expenses at the moment of receipt by the Cooperative are received with the understanding that they are furnished by

the patrons as capital. The Cooperative is obligated to pay by credits to a capital account for each patron all such amounts in excess of operating costs and expenses. The books and records of the Cooperative shall be set up and kept in such a manner that at the end of each fiscal year the amount of capital, if any, so furnished by each patron is clearly reflected and credited in an appropriate record to the capital account of each person, and the Cooperative shall within a reasonable time after the close of the fiscal year notify each patron of the amount of capital so credited to his account. All such amounts credited to the capital account of any patron shall have the same status as though they had been paid to the patron in cash in pursuance of a legal obligation to do so and the patron had then furnished the Cooperative corresponding amounts for capital.

The patrons of the Cooperative, by dealing with the Cooperative, acknowledges that the terms and provisions of the Article of Incorporation and By-Laws shall constitute and be a contract between the Cooperative and each patron, and both the Cooperative and the patrons are bound by such contract, as fully as though each patron had individually signed a separate instrument containing such terms and provisions. The provisions of this Article of the By-laws shall be called to the attention of each patron of the Cooperative by posting in a conspicuous place in the Cooperative's office.

Section 3.

Each member shall, as soon as electric energy shall be available, purchase from the Cooperative all electric energy used on the premises specified in his application for membership, and shall pay therefor monthly at rates which shall from time to time be fixed by the Board of Directors; provided, however that the Board of Directors may limit the amount of electric energy which the Cooperative shall be required to furnish to any one member. It is expressly understood that amounts paid for electric energy in excess of the cost of service are furnished by members as capital and each member shall be credited with the capital so furnished as provided in these By-laws. * * *

The evidence establishes that the plaintiff, although he received single-phase 220 volt power, is charged a commercial rate which is a higher rate than that charged other members who receive the same power. It is established as the reason for this classification that the plaintiff is served from a three-phase line used to serve commercial patrons, which was built past the plaintiff's premises to serve a commercial elevator. The record, however, also establishes that although the plaintiff is served from a three-phase line, the cost to the co-operative in furnishing to him single-phase 220 volt power from this line is no greater than the cost of power served to other users of single-phase 220 volt power from single-phase 220 volt lines and for which they are billed at the lower, regular, or combination rate, and that during the period in question in this action the plaintiff has paid $1,041.97 more than he would have paid had he been billed at the regular rate.

The record also establishes that the defendant co-operative has not credited to the plaintiff's capital account all of the amounts received by it from this plaintiff in excess of operating costs and expenses properly chargeable against the furnishing of such electrical energy, and that the additional amount properly creditable to his capital account during the period in question is the sum of $1,041.97. It appears to me that the plaintiff is entitled to recover from the defendant co-operative as additional credit to his capital account the said amount, and that therefore the judgment of the trial court should be reversed and a judgment entered requiring the defendant to set up on its books a capital credit to the plaintiff in the amount of the excess which it has charged him for electrical energy over and above the regular rate.